## Case No. 15,515.

### UNITED STATES v. KELLY.

[2 Spr. 77;[1] 25 Law Rep. 657.]

District Court, D. Massachusetts.   July. 1863.

SLAVE TRADE—FITTING OUT VESSEL—INDICTMENT.

An indictment for aiding in fitting out a vessel for the slave trade, under Act 1818, c. 91. § 3 [3 Stat. 451]. must contain an allegation that the vessel was fitted out for that trade by some person other than the defendant, and that that person had the intent to employ her in that trade. and that the defendant did aid and abet such person in so fitting out. It must also aver that the fitting out was done at a port within the United States. It is not sufficient to allege that the defendant had the intent. or that the aiding by the defendant was at a port in the United States.

The defendant was found guilty upon one count in the indictment, the material words of which were as follows:—"Zeno Kelly, of New Bedford. in the district of Massachusetts. merchant. at New Bedford. and within the jurisdiction of this court. on the said first day of July. in the year of our Lord one thousand eight hundred and sixty. he

the said Kelly being then and there a citizen of the United States of America, did then and there aid and abet in fitting out, equipping, and otherwise preparing a certain ship and vessel called the ship Tahamaroo, for the purpose of procuring and with intent to employ said ship and vessel in the trade and business of procuring negroes," &c. A motion in arrest of judgment was made. The count was founded on the third section of the act of congress of 1818, c. 91 (3 Stat. 451), against the slave-trade, the words of which are as follows:—"Every person or persons, so building, fitting out. equipping, loading, or otherise preparing, or sending away, or causing any of the acts aforesaid to be done with intent to employ such ship or vessel in such trade or business. after the passing of this act, contrary to the true intent and meaning thereof, or who shall in any wise be aiding or abetting therein, shall severally, on conviction thereof, by due course of law, forfeit and pay a sum." &c. The question was whether the count sufficiently described the offence of aiding and abetting, under the statute.

R. H. Dana, Jr., U. S. Dist. Atty.

The third section is connected with the second. It does not create two offences, one of a principal and the other of an accessory. but creates a misdemeanor, in which all are principals. The true reading of the section is this: it prohibits any person from doing any act or taking part in the fitting out, &c., either as master, owner, or factor, or in any other wise, with an intent, &c. If he fits out, or co-operates in fitting out, being an owner, agent, or factor, he is specifically described; but if he takes part in any other capacity. not that of master, owner, or factor, he is included under the terms "who shall in any wise by aiding or abetting therein," and is equally a principal. The words "aid and abet" in this connection have the force of "co-operating." U. S. v. Gooding, 12 Wheat. [25 U. S.] 476. If a person has a contract by which he has the control of the voyage, and yet is not. in law, either master, owner, or factor. and takes a part in fitting out the vessel, he can be indicted for aiding in the fitting out with the intent. &c. The words "aiding and abetting" are a sufficient allegation that others were concerned with him, as owner, master. or factor, if that be necessary. U. S. v. Mills, 7 Pet. [32 U. S.] 138. Admitting that an intent to employ her in the slave-trade must be alleged on the part of some person having the control, the control is not limited to a master, owner, or factor. The case of a charterer or supercargo having an interest and control would be covered by this count: and if not. such person could not be indicted at all. except as aiding a master. owner, or factor. who had the intent: and if they had not the intent and he had. he could not be indicted. In this case. the jury may have thought that Kelly

---

[1] [Reported by John Lathrop. Esq.. and here reprinted by permission.]

was neither master, owner, nor factor, but had the intent and the power to employ her in the slave-trade; and the owners, and master, and factor, if there were any, may have been innocent. It is sufficiently alleged that Kelly did his acts of co-operation in New Bedford, and the statute does not require allegations or proof of the place where the vessel lay. U. S. v. Gooding, supra; Whart Prec. 1085.

J. M. Blake and E. L. Barney, for defendant.

SPRAGUE, District Judge. This is a motion in arrest of judgment. The count on which the verdict was rendered is as follows. (The learned judge then read the count as given in the statement of facts.) Does this count set forth a criminal offence, or may all the allegations be true, and yet no offence have been committed? This requires an examination of the statute of 1818 (chapter 91), upon which the indictment is founded. By the second section, no person shall "for himself or any other person, either as master, factor, or owner, build, fit, equip, load, or otherwise prepare, any ship or vessel, in any port or place within the jurisdiction of the United States, * * * for the purpose of procuring any negro." &c. This section subjects the vessel to forfeiture, but creates no criminal offence. By the third section, "every person or persons so building, fitting out, equipping, loading, or otherwise preparing, * * * with intent to employ such ship or vessel in such trade or business, * * * or who shall in any wise be aiding or abetting therein." shall on conviction, &c.

This indictment alleges that the prisoner did at New Bedford, "aid and abet in fitting out, equipping, and otherwise preparing." the ship Tahamaroo, &c. The statute describes only a misdemeanor. And the indictment, although it charges the prisoner only with aiding and abetting, still is designed to charge him with a substantive offence. But that offence is secondary in its character, and cannot have been committed unless the primary offence had been committed, and the indictment must allege the commission of such primary offence.

This was expressly decided in U. S. v. Mills, 7 Pet. [32 U. S.] 138. It being thus indispensable that the indictment should set forth the primary offence which the prisoner is alleged to have aided and abetted, we must inquire what that primary offence is. It is created by the first part of the third section, which says that every person or persons, so fitting out, equipping, or otherwise preparing, with intent to employ such ship or vessel, in such trade, &c.

Here we see that, to constitute the primary offence, two things are necessary. First, that some person or persons should have so fitted out a vessel. Second, that such fitting out should have been with intent to employ her in the slave-trade: that is, that the person

so fitting out should have such intent. Does the indictment contain both these requisites? I will consider the latter, that is, the intent, first.

In U. S. v. Gooding, 12 Wheat. [25 U. S.] 460, it was decided that it is not a sufficient description of the offence to allege that the actor fitted out the vessel with intent that she should be employed, &c., but that it must be alleged that it was with intent to employ her, &c. Does this indictment allege that the Tahamaroo was fitted out by any person with intent to employ her in such trade? That is, is it alleged that any actor in the primary offence fitted out this vessel with intent to employ her? So far from it, it is not even alleged that any such actor had any intent whatever. The only intent alleged is that of the prisoner. The indictment says that Kelly aided and abetted in fitting out the Tahamaroo with intent to employ her. This allegation may be true, and yet the primary actors may not themselves have intended to employ the vessel in the slave-trade. They may have only intended that she should be employed by others, or to employ her themselves in some other business. The evidence in this very case shows how this might be. The Tahamaroo was fitted out as a whaler: but it was supposed that after pursuing that business for a while, she was then to engage in the slave-trade. Now it may be that certain persons fitted out the vessel without intending to employ her in the slave-trade, and yet that Kelly aided and abetted in fitting her out with intent on his part so to employ her. He might, for example, have a contract by which he could control her as a charterer, or purchaser, or otherwise. This indictment does not follow the language of the statute which provides that every person so fitting out any vessel with intent to employ her in such trade, &c., and every person aiding and abetting therein, shall be punished. Now, to follow the statute, it is necessary to allege that some person did fit out the Tahamaroo with intent to employ her in the slave-trade, and that Kelly did aid and abet therein; that is, did aid and abet in the commission of the offence just described. I do not mean to say that it is necessary that the indictment should adopt that precise phraseology. It is sufficient if the language be such as clearly alleges the primary offence.

Upon the authority of the case of U. S. v. Mills, above cited, I should hold that the allegation that Kelly did aid and abet in fitting out, necessarily imported and therefore sufficiently averred that the vessel was fitted out by some person or persons; and if that alone constituted the primary offence, it would have been sufficient. But the intent of such person or persons to employ her in the forbidden trade is an essential part of that offence. U. S. v. Gooding, 12 Wheat. [25 U. S.] 472. And that intent is not alleged even by implication, because Kelly may have

had the intent to employ the vessel in the slave-trade, although, as we have seen, the persons whom he aided in fitting her out, may not themselves have intended so to employ her.

I proceed now to inquire whether this indictment contains the other requisite. Does it allege that the Tabamaroo was fitted out in any port of the United States. That this is necessary to constitute the primary offence, is expressly decided in U. S. v. Gooding, 12 Wheat. [25 U. S.] 472. Does this seventh count contain that allegation? It avers that Kelly, at New Bedford, in the district of Massachusetts, and within the jurisdiction of this court, on the said first day of July, * * * did then and there aid and abet in fitting out, equipping, and otherwise preparing a certain ship and vessel called the Tabamaroo. May this allegation be true, and yet the Tabamaroo have been at some place beyond the limits of this district when she was fitted?

Story, J., in delivering the opinion of the court in U. S. v Gooding [supra], says: "We do not consider that the terms 'aid and abet,' used in this statute, are used as technical phrases belonging to the common law, because the offense is not made a felony, and therefore the words require no such interpretation. The statute punishes them as substantive offences, and not as accessorial, and the words are therefore to be understood as in the common parlance, and import assistance, co-operation, and encouragement."

From this exposition of the terms "aiding and abetting" in the statute, it appears that they do not necessarily import that the aider or abettor must be present at the commission of the primary offence. It seems, therefore, that the vessel might be actually fitted out in one place, and the distinct substantive offence of aiding and abetting be committed in another. Thus the acts which constituted the aiding and abetting may have been done in New Bedford; for example, the prisoner may there have furnished money to the primary actor, or given him information and advice, or shipped seamen, although the vessel was actually in New York and fitted out there. In such case, neither the primary actor, nor any person at New York, would be the agent or instrument of Kelly; and his acts being all done in New Bedford, his offence was committed there, and not at New York, where the vessel actually was. At common law an accessory was indictable in the county where the acts of counselling, procuring, or commanding, which made him an accessory, were done, although the principal offence was committed in another county. And statutes, both in England and in this country, provide for the punishment of an accessory, either in the county where he committed his offence by counselling, procuring, or commanding, or in the county in which the principal offence was committed; thus expressly declaring that the offence of the accessory may be complete in a county other than that in which the principal offence was committed. 1 Archb. Cr. Proc. (by Waterman, 7th Ed.) 73, 74, 80, 250, 251.

If the indictment had alleged that this vessel "being in the port of New York, certain persons did, then and there, fit, equip, and prepare her, with intent to employ her in the slave-trade; and that Kelly, well knowing that said persons were so fitting, equipping, and preparing her, with intent so to employ her, did, at New Bedford, aid and abet them in so fitting" &c., I do not think that it could have been objected that the averment that the vessel was fitted out at New York was inconsistent with the averment that the prisoner did, at New Bedford, aid and abet such fitting out.

I cannot think that the allegation that the prisoner did, at New Bedford, aid and abet the fitting out of the Tabamaroo, necessarily imports that she was fitted out at that place. She might have been either at New York or Havana. There is, therefore, no allegation that she was fitted out in a port of the United States.

Before closing, it is proper to notice an argument founded on the third count in U. S. v. Gooding. It is contended that that count had the sanction of the court, and that the one now before me is like it.

The third count in that case alleged that the prisoner, a citizen of the United States, and residing therein, at the district of Maryland, "and within the jurisdiction of this court, did aid in fitting out, for himself, as owner, in the port of Baltimore, within the jurisdiction of the United States, to wit, at the district aforesaid, a certain other vessel called the General Winder, with intent that the said vessel, the General Winder, should be employed in procuring negroes," &c.

The only objection made to this count was, that it did not "charge any offence to have been committed by any principal, to whom the defendant was or could be aiding or abetting."

The court, in answering this objection, say: "The fifth instruction turns upon a doctrine applicable to principal and accessory in cases of felony, either at the common law or by statute. The present is the case of a misdemeanor; and the doctrine, therefore, cannot be applied to it." The court further say, that in misdemeanors all are principals, and that no question of actual or constructive presence can arise; and that in the case before them, the indictment is, in the third and fourth counts, laid by aiding and abetting in the very terms of the act of congress.

They further discuss the force and effect of those words. In saying that the count was in the words of the statute, the court must have referred only to the words "aiding and abetting." They could have no reference to the allegation of intent, because in the third count the language is with intent that the vessel should be employed, which

the court, when their attention was subsequently called to it in connection with the sixth count, declared to be wholly different from the language of the statute.

Nor was any thing said, in disposing of the third count, of the necessity of its appearing that the vessel was fitted out in the United States, though that was held to be essential when the point was raised on subsequent counts. Perhaps the third count was, in this respect. sufficient. It alleged that the prisoner, at the district of Maryland, did aid in fitting out the vessel in the port of Baltimore.

If the words "in the port of Baltimore" had been omitted, it would have been like the indictment now before me. That is, it would have said that he did, at Maryland, aid and abet in fitting out. Adding the words "at Baltimore," may, perhaps, be considered as qualifying the words "fitting out." and designating the place where that was done. I do not think that the court, in disposing of the third count, intended to decide that it· was not necessary that it should appear that the vessel was fitted out in the United States, and with intent to employ her in the slave trade. because it would be inconsistent with their decision on the sixth count, and also with the subsequent decision of the supreme court in U. S. v. Mills. 7 Pet. [32 U. S.] 138.

The truth is, the court. in regard to the third count, confined their attention to the single objection made to it by counsel, and to one aspect of that objection, and are not to be understood to have decided that the count was. in all respects. sufficient.

Judgment must be arrested.